# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# CENTRAL DIVISION

| | | |
|---|---|---|
| JAMES SPANN, Register No. 160792, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 05-4067-CV-C-SOW |
| | ) | |
| CORRECTIONAL MEDICAL SERVICE, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## REPORT, RECOMMENDATION AND ORDER

Plaintiff James Spann, an inmate confined in a Missouri penal institution, brought this case under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and its corresponding jurisdictional statute, 28 U.S.C. § 1343. This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Defendant Correctional Medical Services (CMS) and CMS defendants Garcia, Wilson, and McCullough filed a motion for summary judgment and a supplement, to which plaintiff has responded and defendants subsequently replied[1]. Plaintiff has also filed numerous motions for summary judgment, to which defendants have responded.

In support of his claims for relief, plaintiff states defendants denied him medical treatment subsequent to his being maced during a use-of-force incident at the prison that involved plaintiff and his cellmate Daniel Thorsen (a former plaintiff in this case prior to voluntary dismissal of his claims). Plaintiff alleges that despite his complaints of mace burns and a blood clot in his foot, he was intentionally denied medical attention.

In response to plaintiff's statements, defendants submit plaintiff's medical records which defendants state show plaintiff received adequate medical care for his complaints. Defendants

---

[1]Defendants' May 9, 2006 motion to supplement their motion for summary judgment on the issue of exhaustion of administrative remedies will be granted. Plaintiff's response to the supplement is considered by this court in review of summary judgment.

state plaintiff's claims are merely a disagreement in the form of treatment received which is not actionable under 42 U.S.C. § 1983.

## Statement of Facts

In the instant case, there is no dispute of fact that plaintiff and his cellmate Thorsen were sprayed with pepper mace on January 21, 2005, during a use-of-force by prison officials. It is undisputed, and apparent from the records and filings in this case that plaintiff's medical records dated January 21, 2005, the date of the use-of-force incident, are, in fact, the records of his cellmate Thorsen, and, therefore, not reflective of the medical care plaintiff received on that date.[2] The court finds that defendants concede to the error and that such error appears to have been an unintentional good faith mistake in confusing plaintiff's medical records with those of his cellmate subsequent to the use-of-force incident. The remaining medical records for plaintiff are not contested.

On January 24, 2005, three days after being sprayed with pepper mace, plaintiff filed a Medical Services Request (MSR) seeking medical attention for a spider bite. The request made no mention of mace burns or other medical problems. In response to plaintiff's request for medical services, defendant Nurse McCullough evaluated plaintiff's complaint regarding the spider bite, and issued him hydrocortisone cream, a steroid-based medicated cream used on skin for treating a variety of skin irritations and inflammation.

On February 5, 2005, plaintiff was evaluated by defendant Sue Wilson, R.N. The evaluation noted plaintiff was involved in a use-of-force incident and sought to evaluate plaintiff's physical and mental condition per protocol. Nurse Wilson noted that plaintiff had no marks on his trunk, arms, legs, wrists, ankles or head and had no complaints. It was noted that plaintiff was crying and quiet, but denied suicidal or homicidal thoughts and stated only that he was afraid and tired. Nurse Wilson noted plaintiff to be anxious initially, but that he later calmed during the evaluation. Nurse Wilson noted that plaintiff had been placed in a paper gown per custody.

---

[2]Plaintiff's April 24, 2006 motion for default judgment and his May 5, 2006 motion for sanctions should be denied.

On February 22, 2005, defendant Nurse McCullough evaluated plaintiff in response to an MSR and noted that plaintiff had a lower leg rash and dry skin areas and that plaintiff had been issued hydrocortisone cream and directed plaintiff to purchase soap for dry skin.

On March 1, 2005, plaintiff filed an MSR stating that the rash was not responding to the hydrocortisone cream. On March 3, 2005, plaintiff was seen by defendant Dr. Garcia, who prescribed one percent hydrocortisone cream to be used twice daily for two months.

On April 7, 2005, Dr. Garcia again evaluated plaintiff regarding his continued complaints of being maced in January and having skin that itches all over and burns. Dr. Garcia noted the overall examination was normal and that he would continue to monitor. It was noted there were no discernable lesions on the skin, no sign of excoriation or discoloration; patient was able to move around his cell without any signs of pain, he bends at the waist without problems and seems coherent and not confused.

On April 17, 2005, in response to a number of MSR's submitted by plaintiff, Dr. Garcia ordered plaintiff's prescription be changed from hydrocortisone cream to coal tar five percent lotion.

On April 20, 2005, plaintiff was seen by Dr. Garcia, complaining of problems stemming from the January 2005 use-of-force incident. Assessment was dry skin. Dr. Garcia also evaluated plaintiff for complaints of a blood clot in his foot. Dr. Garcia noted a specific area of plaintiff's foot that plaintiff identified as painful, but noted that the area was not swollen and no gross deformities were observed. Dr. Garcia's notes indicate he did not believe there was a blood clot, but he ordered X-rays to evaluate. Dr. Garcia noted that plaintiff limped out to go to X-ray, favoring his right foot and came back from X-ray favoring his left, and when he left the examining room and medical building, he exhibited no limp. X-rays, upon review by Dr. Garcia and upon interpretation by radiology, concluded there to be no gross abnormalities in plaintiff's foot. Dr. Garcia further noted the pepper spray that was used on plaintiff during the use-of-force incident was biodegradable when exposed to water. It was noted that there were no obvious areas of damage or lesions and no signs of excoriation; rather, overall dryness of skin that is experienced universally by persons at this prison.

On May 5, 2005, plaintiff was evaluated by Dr. Elizabeth Conley, a nondefendant doctor for CMS. Dr. Conley found plaintiff to be upset and hostile and insisting that he had sores all

3

over his legs with pus coming out. Dr. Conley found no open or draining wounds on plaintiff's legs. Plaintiff also advised that he had a blood clot coming out the bottom of his foot. Dr. Conley noted a cyst on plaintiff's right foot, on which plaintiff would allow only limited examination, stating that it was a blood clot. Dr. Conley reviewed the X-rays which determined no deformity evident in plaintiff's foot. On August 26, 2005, plaintiff is recorded as being a no-show for his complaint of foot problems.

## Summary Judgment Standard

Fed. R. Civ. P. 56(c) requires "the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The burden on the party moving for summary judgment "is only to demonstrate . . . that the record does not disclose a genuine dispute on a material fact." City of Mt. Pleasant, Iowa v. Associated Elec. Co-Op., 838 F.2d 268, 273 (8th Cir. 1988).

Once the moving party has done so, the burden shifts to the nonmoving party to go beyond his pleadings and show, by affidavit or by "depositions, answers to interrogatories, and admissions on file," that there is a genuine issue of fact to be resolved at trial. Celotex, 477 U.S. at 323. Evidence of a disputed factual issue which is merely colorable or not significantly probative, however, will not prevent entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Summary judgment, however, "is an extreme remedy, to be granted only if no genuine issue exists as to any material fact." Hass v. Weiner, 765 F.2d 123, 124 (8th Cir. 1985). In ruling on a motion for summary judgment, this court must view all facts in a light most favorable to the nonmoving party, and that party must receive the benefit of all reasonable inferences drawn from the facts. Robinson v. Monaghan, 864 F.2d 622, 624 (8th Cir. 1989).

If "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law," the court must grant summary judgment. Fed. R. Civ. P. 56(c).

## Eighth Amendment Deliberate Indifference

Plaintiff's claims are based upon allegations that defendants were deliberately indifferent to his serious medical needs, in violation of his constitutional rights. To succeed on his Eighth Amendment medical claims, plaintiff must allege and prove, by a preponderance of the evidence,

4

a "deliberate indifference to a serious medical need." Estelle v. Gamble, 429 U.S. 97, 106 (1976). Prison officials may not be held liable under 42 U.S.C. § 1983 for mere negligence in the treatment of an inmate. Id. The standard for "deliberate indifference" includes an objective and a subjective component. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)). Thus, to prevail on his claims, plaintiff must show 1) that the medical deprivation was objectively sufficiently serious; and 2) that prison officials subjectively knew about the deprivation and refused to remedy it. A serious medical need is defined as "one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995) (quoting Johnson v. Busby, 953 F.2d 349, 351 (8th Cir. 1991)); see also Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citing Camberos v. Branstad, 73 F.3d at 176). When an inmate alleges a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation is also measured by reference to the effect of the delay in treatment. Coleman v. Rahija, 114 F.3d at 784 (citing Crowley v. Hedgepeth, 109 F.3d 500, 502 (8th Cir. 1997)); see also Beyerbach v. Sears, 49 F.3d at 1326. An inmate who complains that the delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. Beyerbach v. Sears, 49 F.3d at 1326 (quoting Hill v. Dekalb Regional Youth Detention Ctr., 40 F.3d 1176, 1188 (11th Cir. 1994)).

A mere difference of opinion between plaintiff and his treating physician about what treatment is appropriate does not give rise to a colorable claim under section 1983. Warren v. Fanning, 950 F.2d 1370, 1373 (8th Cir. 1991); Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990); Courtney v. Adams, 528 F.2d 1056 (8th Cir. 1976). Likewise, disagreement with a diagnosis or course of medical treatment is insufficient to state a claim. Davis v. Hall, 992 F.2d 151, 153 (8th Cir. 1993). Nothing in the Eighth Amendment prevents doctors from exercising independent medical judgment. Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996).

Upon review of the medical records and the MSR's submitted by plaintiff, the court finds for the reasons set forth below that despite plaintiff's allegations, he has failed to set forth evidence that he was denied medical care for a serious medical need, or that necessary medical care was delayed resulting in injury.

First, plaintiff has failed to set forth evidence that he had a serious medical need. Plaintiff's alleged mace burns are unsupported by evidence. Although plaintiff alleges he suffered mace burns because he was denied a shower for ten days after being maced, the evidence indicates that just three days after being sprayed with the pepper spray, he sought medical care for a spider bite, with no mention of mace burns or any other medical problem. R.N. Wilson evaluated plaintiff on February 5, 2005, a little more than a week after the use-of-force incident and noted plaintiff to have no marks on his trunk, arms, legs, wrists, ankles or head and that plaintiff had no complaints. Plaintiff was evaluated on several occasions by Dr. Garcia, who noted plaintiff to have no obvious areas of damage or lesions; rather, overall dryness of skin. Plaintiff was evaluated by a nondefendant, Dr. Conley, in May 2005, who determined plaintiff to have no lesions on his legs and merely a marble-size cyst on his foot, which had previously been X-rayed and determined not to be of concern. Plaintiff's continued complaints of mace burns, months after the incident, are not supported by the medical records. The evidence is that the pepper spray is biodegradable with water, and thus, would not have a prolonged effect. Furthermore, the evidence is that medical personnel determined plaintiff's complaints to be related to dry skin, a universal problem by prisoners in the prison, and for which plaintiff had been treated just prior to the use-of-force incident.[3]

On April 20, 2005, during a telephone conference with this court regarding preliminary injunctive relief for denial of medical care, plaintiff complained of open lesions on his legs and a baseball-size blood clot on his right leg. Based upon such allegations, and pursuant to the request of this court, plaintiff was immediately re-evaluated by Dr. Garcia. The evaluation determined plaintiff to have no lesions on his legs or a blood clot.

Based upon plaintiff's medical records, there is no evidence that plaintiff was suffering from mace burn or a blood clot. Moreover, based upon the telephone conference and the records of Drs. Garcia and Conley indicating plaintiff was changing the leg he was limping on, and asserting he had lesions on his legs despite obvious evidence to the contrary, the court finds that

---

[3]On January 4, 2005, plaintiff's medical records show he was seen for complaints of itchy rash on his legs.

plaintiff's complaints of a serious medical condition to be delusional.  There is no credible evidence to support plaintiff's complaints of a serious medical need.

Secondly, even if the court assumes that plaintiff had a genuine serious medical condition, the undisputed evidence is that plaintiff received medical care for his complaints of mace burns and a blood clot.  Plaintiff was issued hydrocortisone cream for his complaints of a rash/burning on his skin, and subsequently coal tar five percent lotion when he stated that the hydrocortisone cream was not effective.  Plaintiff's complaints as to the blood clot in his foot were evaluated by two doctors and an X-ray was taken.  The interpretation by the doctors and radiology determined the X-ray to be normal.  The fact that plaintiff disagreed or was unsatisfied with his diagnosis and subsequent treatment for his medical complaints does not state a claim of deliberate indifference, and is not actionable under section 1983.  "In the face of medical records indicating that treatment was provided and physician affidavits indicating the care provided was adequate, an inmate cannot create a question of fact by merely stating that he did not feel he received adequate treatment."  Dulany v. Carnahan, 132 F.3d 1234, 1240 (8th Cir. 1997).

Finally, plaintiff has no evidence of injury beyond his own statements.  Plaintiff's medical records do not support that he currently suffers from an injury or at any point was injured by denial of medical care.

## Conclusion

The evidence presented does not present a dispute of material fact regarding plaintiff's claims of denial of medical care.  No reasonable jury could find, based upon the evidence, that plaintiff had a serious medical need for which he was being denied treatment.  CMS defendants are entitled to judgment as a matter of law.

In light of this court's finding that CMS defendants did not violate plaintiff's constitutional rights, plaintiff's claims against CMS, on the basis of supervisory liability also must fail.  Moreover, respondeat superior cannot be a basis for liability under 42 U.S.C. § 1983.  Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995).  It is further unnecessary for this court to address defendants' renewed basis for dismissal, i.e., failure to exhaust administrative remedies.

Defendants' motion for sanctions alleging plaintiff's claims are based upon allegations that are unfounded and that plaintiff has, in fact, lied to the court, will be denied, without prejudice, subject to reconsideration should plaintiff's claims proceed.  Finally, plaintiff's motion

for appointment of counsel is denied, without prejudice, and plaintiff's numerous motions for summary judgment should be denied, with prejudice, for the reasons set forth above.

IT IS, THEREFORE, ORDERED that defendants' motion for leave to supplement motion for summary judgment is granted [113]. It is further

ORDERED that defendants' motion for sanctions, and plaintiff's motion for appointment of counsel are denied, without prejudice [94, 104]. It is further

ORDERED that plaintiff's motion for sanctions is denied [111]. It is further

RECOMMENDED that plaintiff's motion for default judgment be denied [107]. It is further

RECOMMENDED that plaintiff's motions for summary judgment be denied [101, 103, 116, 120]. It is further

RECOMMENDED that defendants' motion for summary judgment be granted and plaintiff's claims be dismissed [83].

Under 28 U.S.C. § 636(b)(l), the parties may make specific written exceptions to this recommendation within twenty days. The District Judge will consider only exceptions to the specific proposed findings and recommendations of this report. Exceptions should not include matters outside of the report and recommendation. Other matters should be addressed in a separate pleading for consideration by the Magistrate Judge.

The statute provides for exceptions to be filed within ten days of the service of the report and recommendation. The court has extended that time to twenty days, and thus, additional time to file exceptions will not be granted unless there are exceptional circumstances. Failure to make specific written exceptions to this report and recommendation will result in a waiver of the right to appeal. See L.R. 74.1(a)(2).

Dated this 31st day of July, 2006, at Jefferson City, Missouri.

/s/ *William A. Knox*

WILLIAM A. KNOX
United States Magistrate Judge

8